# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### NORTHERN DIVISION

| | |
|---|---|
| SHANNON LOUISE MILLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:16-CV-52 CDP |
| JUSTIN JONES, et al., | ) ) ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff, an inmate currently being held at the Women's Eastern Reception Diagnostic and Correctional Center ("WERDCC"), was granted leave to proceed in forma pauperis in this civil action under 42 U.S.C. § 1983 on September 23, 2016. Based on a review of plaintiff's amended complaint, filed on October 31, 2016, the Court will appoint counsel, and counsel will be required to file a second amended complaint in this matter.

### Legal Standard

Under 28 U.S.C. § 1915(e), the Court is required to review in forma pauperis complaints and dismiss them if they are frivolous, malicious, or fail to state a claim upon which relief can be granted.

### The Amended Complaint

Plaintiff, an inmate at WERDCC, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of her civil rights. She names three individuals as defendants in this action, as well as Corizon Health, LLC. The three doctors employed by Corizon named as defendants are: Dr. Hari Kapor (physician at WERDCC); Dr. Tom Bredeman (Corizon Medical Director with Office in Jefferson City, Missouri); and Dr. Justin Jones (physician at WERDCC).

Plaintiff makes several claims against defendants relating to their delay in treatment of her significant health care issues, as well as their deliberate indifference to her serious health care needs, all in violation of the Eighth Amendment.

Plaintiff claims that prior to her incarceration at WERDCC she had a knee replacement in June of 2013. She states that she was received into the Missouri Department of Corrections in January of 2014 and at that time; she was allowed to use a wheelchair for "long distances." She claims that over the next 15 months' time, she was in considerable pain relating to her knee, and she had to attend a number of doctor visits and sick calls relating to the pain. Between January of 2014 and September of 2016, defendants delayed treatment on plaintiff's leg until such time as plaintiff could not walk at all and was in constant pain. In September of 2016, plaintiff was finally given a new knee replacement surgery after defendants admitted in the Spring of 2016 that something had gone wrong with plaintiff's knee replacement and caused damage to plaintiff's leg. Plaintiff states that despite having been given a knee replacement, she has not been started on physical therapy for her leg.

During the past year and a half, plaintiff has also been allegedly suffering from back pain that occurred after a fall in her housing unit in May of 2015. Plaintiff claims that her wheelchair was taken away while the floor crew cleaned in her housing unit on May 19, 2015, and she fell on the wet floor. She claims "no wet signs were visible."

Plaintiff states that she had to "self-declare" her injuries when a correctional officer refused to do an accident report. The nurse on call refused to call the doctor or do an x-ray even though plaintiff could not stand on her leg at all and her back radiated pain. Plaintiff claims that she continued almost daily visits to medical for back and leg pain, asking to see the doctor on call or Dr. Hari Kapor. Despite her requests, plaintiff states that it wasn't until September of

2015, or right after Dr. Justin Jones became the on-site Medical Director at WERDCC, that she was sent for an MRI on her back. The MRI found several issues that resulted in a consult with a neurosurgeon in Jefferson City. Although the neurosurgeon told plaintiff she needed immediate surgery, Corizon canceled the scheduled surgery, telling plaintiff that because she didn't have "permanent nerve damage," her surgery wasn't necessary. In May of 2016, the orthopedic surgeon who looked at plaintiff's knee also looked at the MRI results for plaintiff's back and told plaintiff he concurred that she needed immediate surgery on her back to alleviate the daily pain. Plaintiff states that no surgery on her back has yet been scheduled.

By July 3, 2015, plaintiff states she was once again in TCU due to her pain level, however, on that date, she states that Dr. Bredeman "took" her authorized wheelchair and told her to use a walker even though she had an active authorization to use the wheelchair from Dr. Hari Kapor who had just retired from Corizon. Dr. Bredeman was filling in at WERDCC as the onsite medical director. Plaintiff states that she ended up going four days without showering, three days without eating and two days without drinking because custody staff wasn't allowed to bring her any food or a wheelchair per Dr. Bredeman's medical orders. Plaintiff was allegedly supposed to walk to get those things herself. On July 7, 2015, plaintiff states that a correctional officer felt sorry for her and provided her with a wheelchair to use.

## Discussion

At this time, plaintiff has not named a legally suable defendant in her amended complaint.[1] However, her claims for deliberate indifference to her medical care, and delay in

---

[1] The complaint is silent as to whether defendants are being sued in their official or individual capacities. Where a "complaint is silent about the capacity in which [plaintiff] is suing defendant, [a district court must] interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Naming an official in his or her official capacity is

treatment of her medical care, in violation of the Eighth Amendment, are serious and troubling. *See Alberson v. Norris*, 458 F.3d 762, 765-66 (8th Cir. 2006) (A prison official's deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment.); *see also, Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (plaintiff has sufficiently alleged that the delay in treatment adversely affected her condition and prognosis, in that she alleges the delay in treatment necessitated reconstructive surgery).

Therefore, the Court will appoint counsel in this matter and allow plaintiff's counsel to amend her complaint through counsel.

Accordingly,

**IT IS HEREBY ORDERED** that the Court will not issue process on plaintiff's amended complaint at this time.

**IT IS FURTHER ORDERED** that by separate Memorandum and Order, the Court will appoint counsel in this matter and allow appointed counsel to amend plaintiff's complaint against defendants.

Dated this 7th day of March, 2017.

						_____
						CATHERINE D. PERRY
						UNITED STATES DISTRICT JUDGE

---

the equivalent of naming the entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). To state a claim against an official in his or her official capacity, plaintiff must allege that a policy or custom of his or her employer is responsible for the alleged constitutional violation. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). The instant complaint does not contain any allegations that a policy or custom of Corizon was responsible for the alleged violations of plaintiff's constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted.