UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| SHANNON LOUISE MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16 CV 52 CDP |
| | ) | |
| JUSTIN JONES, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Shannon Miller alleges that while she was an inmate in the Missouri Department of Corrections the prison medical providers were deliberately indifferent to her serious medical needs. She alleges that she was in severe pain because of back and knee problems and was unable to walk; she claims that the defendant prison doctors, who are employed by defendant Corizon LLC, delayed and denied necessary treatment. She brings this 42 U.S.C. § 1983 case against Corizon and against doctors Justin Jones, Hari Kapur, Tom Bredeman and Milton Hammerly.

I have considered the voluminous evidence presented by the parties and will deny the doctors' summary judgment motion as to the two counts of deliberate indifference, as numerous factual disputes remain on those claims. I will, however, grant summary judgment to Corizon as no evidence has been presented

showing that any policy or custom of Corizon caused plaintiff's problems. I will also grant summary judgment to all defendants on Miller's claims of denial of life's necessities, retaliation, and conspiracy. The case remains set for jury trial on September 3, 2019 in Hannibal.

## Background

When Shannon Miller entered the Women's Eastern Reception, Diagnostic, and Correctional Center (WERDCC) in January of 2014, she had a complicated medical history. That included a right knee injury in 1999, a partial left knee replacement in 2013, past fractures of her collarbone, leg and arm, additional surgeries because of complications of Methicillin-resistant staphylococcus aureus, rheumatoid arthritis, lupus, sciatic nerve pain, and high blood pressure. During her time at WERDCC from January 2014 to August 2017, plaintiff complained of bilateral knee pain, left leg pain, sciatic pain, and lower back pain.

The defendants saw plaintiff numerous times and she often complained of the same symptoms, describing her pain as severe. Medical records indicate that plaintiff was wheelchair bound and had difficulty walking, even with a walker. During this two and half year period, she self-declared three medical emergencies and was seen in the infirmary numerous times.

Plaintiff's complaints of knee pain began shortly after she arrived at WERDCC and defendant Dr. Kapur saw her on several occasions. In July 2014,

2

an x-ray of both knees revealed that her left knee had arthritis and that small fragments of bone or cartilage were moving freely in the joint fluid. Throughout the course of her confinement, plaintiff had three x-rays of her left knee and a CT scan, each revealing a similar problem. After the first x-ray was taken, Dr. Kapur requested that plaintiff see an orthopedist to evaluate her left knee; this request was denied by defendant Dr. Bredeman. Dr. Kapur continued seeing her for complaints of knee pain for several months after that. Over a year after her first medical visit for knee pain, defendant Dr. Jones requested an orthopedic referral to evaluate that same knee, which also was denied. It was not until May 2016 that a referral was approved and plaintiff was seen by an orthopedic surgeon, Dr. Krautman. Dr. Krautman concluded that plaintiff required a total left knee replacement and he performed the procedure in October 2016. The parties have a factual dispute about why plaintiff never received physical therapy after that surgery and about whose job it was to order physical therapy.

Plaintiff claims that her back pain began in May 2015, after she slipped and fell when leaving her cell.[1] In October 2015, Dr. Jones ordered an MRI of her lower spine and requested a referral to an orthopedic surgeon. The MRI revealed a grade-1 anterior spondylolisthesis in the L6-S1 area, a left side disc protrusion, likely nerve compression, and narrowing of the space between discs. Dr.

---

[1] Defendants contend that her only reported fall was in June of 2015.

Bredeman agreed to the referral for the back pain (this was the same time he first denied the referral for knee pain). Dr. Jeff Lehman, an orthopedic surgeon, saw Miller in December 2015 and scheduled her for lower back surgery in January. Defendant Dr. Hammerly reviewed Dr. Lehman's consultation and decided that because of Miller's medical history she was not a good candidate for surgery. He stated that he needed evidence that plaintiff's lupus and rheumatoid arthritis were adequately managed, although the evidence is undisputed that she had never complained of symptoms or received treatment for either condition while at WERDCC. Her back surgery was never rescheduled although additional CT scans revealed the same diagnosis. Instead of the surgery, Dr. Hammerly ordered a nerve conduction study.

Plaintiff has presented evidence through an expert witness that the decision to cancel her back surgery, the delay of knee surgery, and the failure to provide physical therapy were unreasonable decisions that resulted in permanent limitations. Defendants deny that any of their actions were unreasonable and argue that plaintiff cannot show any injury from the delay or lack of treatment.

## Discussion

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

4

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). I must view the evidence in the light most favorable to plaintiff (the nonmoving party) and accord her the benefit of all reasonable inferences. *Scott v. Harris,* 550 U.S. 372, 379 (2007). Where sufficient evidence exists to support a factual dispute, a jury must resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is considered "material" if it "might affect the outcome of the suit under the governing law." *Id.*

To establish a claim under 42 U.S.C. § 1983 based on deliberate indifference to serious medical needs a plaintiff must demonstrate an objectively serious medical need and that each defendant had actual knowledge of that need but deliberately disregarded it. *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018). A medical need is objectively serious if it has been diagnosed by a physician or "if it is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (*quoting Jackson v. Buckman,* 756 F.3d 1060, 1065 (8th Cir. 2014)). "To demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). Whether a serious medical

need exists and whether an official was deliberately indifferent to it are questions of fact. *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011).

When a delay in medical treatment forms the basis of the deliberate indifference claim, the objective seriousness of the deprivation is measured by the "effect of delay in treatment." *Jackson v. Riebold,* 815 F.3d 1114, 1119 (8th Cir. 2016). This requires verifying medical evidence showing that the delay had a detrimental effect. *Id.* Further, a plaintiff can show deliberate indifference by either showing inadequate medical care or a doctor's "decision to take an easier and less efficacious course of treatment." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010).

**Deliberate Indifference Claims against Doctors (Counts I and II)**

A jury could find that Miller's knee and back pain constituted objectively serious medical needs. *See Dadd v. Anoka Cty.*, 827 F.3d 749, 755 (8th Cir. 2016) (severe pain); *Krout v. Goemmer*, 583 F.3d 557, 568 (8th Cir. 2009) (inability to walk). Additionally, the fact that two physicians scheduled her for surgery to correct these issues further indicates that these could be considered objectively serious medical needs.

As for the subjective component, defendants were aware of plaintiff's various medical conditions because of the well-documented instances when they saw her for her knee and back pain. Dr. Kapur and Dr. Jones requested that her

6

left knee be evaluated by an orthopedist, a request that was denied two times, yet there is no evidence that they made any attempts to follow up with their superiors or attempt to get the decision changed. When an orthopedic surgeon did finally see plaintiff, he concluded that she required a total left knee replacement. The stated reason given by Dr. Hammerly when he canceled the back surgery that had been scheduled earlier by a different orthopedic surgeon – her lupus and rheumatoid arthritis – was not taken into account when she had her knee surgery a few months later. A fact-finder could conclude that this was not a mere disagreement over the proper course of treatment given the evidence that she was never treated for lupus or rheumatoid arthritis while incarcerated. Moreover, there is a dispute regarding the nerve conduction study that was performed instead of the scheduled back surgery, which suggests that defendants took a "less efficacious course of treatment." *Langford*, 614 F.3d at 460.

While these are not the only facts that could permit a jury to find that the defendants knew of the substantial risk from Miller's objectively serious medical needs and were deliberately indifferent to them, they are sufficient reasons to deny summary judgment. *Schaub,* 638 F.3d at 916. Plaintiff has alleged that the delay of her knee surgery, the failure to obtain physical therapy, and the cancelation of

her back surgery worsened her condition. Her expert, Dr. Raskas, has testified to this, although defendant's witnesses contradict Dr. Raskas.[2]

**Other Claims**

Respondeat superior cannot be a basis for a § 1983 claim. *See e.g., Rogers v. King,* 885 F.3d 1118, 1122 (8th Cir. 2018). To hold Corizon liable, therefore, Miller must show that Corizon has a custom or policy of failing or delaying delivery of medical treatment or of providing insufficient care. And that custom or policy must be "the moving force behind a constitutional violation." *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016). The only evidence that plaintiff has presented that could be relevant to this issue is that a former Corizon employee told plaintiff that Corizon delayed or denied care to save money. This evidence is not admissible for a number of reasons, and in any event, without more it is wholly insufficient to impose liability on Corizon. I will grant Corizon summary judgment on all claims.

I will also grant summary judgment on Counts III (deprivation of life's necessities), Count IV (retaliation), and Count V (conspiracy). Plaintiff has failed

---

[2] In their reply brief, defendants argue that Dr. Raskas's testimony lacks foundation and is not admissible under Rule 702, Fed. R. Evid. ECF # 75 at p. 6. I will not decide whether expert testimony is admissible based on an argument raised only in a reply brief. Additionally, the Case Management Order deadline for filing motions to exclude or limit expert testimony passed several months before the reply brief was filed.

to introduce any evidence from which a reasonable fact-finder could conclude that defendants are liable on these claims.

To hold an official liable for the deprivation of life's necessities, the deprivation must be objectively serious and the official "must be deliberately indifferent to the prisoner's health." *Scott v. Carpenter*, 24 F. App'x 645, 647 (8th Cir. 2001). Plaintiff alleges that Dr. Bredeman confiscated her wheelchair when she was in the infirmary, thereby depriving her life's necessities. But plaintiff has admitted that Dr. Bredeman ordered her to ambulate with a walker every two hours to prevent embolisms. There are no genuine disputes of material fact with regard to this claim.

Count IV of plaintiff's complaint alleges that defendants denied Miller medical care in retaliation for her filing of grievances against them. But she has not offered any evidence regarding an impermissible motive of any of the defendants. *Meuir v. Greene Cty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (lack of evidence regarding motive defeats the claim). She also did not provide any evidence that she filed grievances or has been barred from doing so. Defendants are entitled to summary judgment on this claim.

To prove a § 1983 conspiracy claim, a plaintiff must show: (1) the defendants engaged with one another or with others to deprive her of constitutional rights; (2) that one of the alleged co-conspirators engaged in an overt act in

furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008). Further, plaintiff is required to prove a deprivation of a constitutional right in order to prevail on a § 1983 claim. *Id*. Although circumstantial evidence may be sufficient to show a conspiracy, *id.,* plaintiff has not presented any evidence from which a rational fact-finder could conclude that the defendants conspired to violate her constitutional rights. Plaintiff argues that only a meeting of the minds could have resulted in the repeated denial of care that is alleged here, but under all the circumstances, this is not sufficient to support a verdict for conspiracy. I will grant the motion for summary judgment on Count V.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment [67] is granted as to Counts III, IV and V as to all defendants and as to defendant Corizon LLC on all claims; the motion is denied in all other respects.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of July, 2019.